IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TIFFANY H.,[1] | No. 3:24-cv-00036-HL |
| Plaintiff, | FINDINGS & RECOMMENDATION |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

HALLMAN, Magistrate Judge:

Plaintiff Tiffany H. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Social Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 401 *et seq*. For the following reasons, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – FINDINGS & RECOMMENDATION

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Application**

Plaintiff alleges disability based on the combined effects of her bipolar II, depression, anxiety, post-traumatic stress disorder (PTSD) and insomnia. Tr. 82-83.[2] At the time of

---

[2] Citations to "Tr." are to the Administrative Record, ECF No. 10.

Plaintiff's amended alleged onset date, July 11, 2018, she was 32 years old. Tr. 256. Plaintiff applied for SSI on January 15, 2021, initially alleging disability beginning December 16, 2020, and later amending the onset date to July 11, 2018. Tr. 247-55. Her applications were denied initially and on reconsideration. Tr. 122-27, 131-33. Plaintiff subsequently requested a hearing, which was held on March 8, 2023 before Administrative Law Judge (ALJ) Richard Geib. Tr. 48, 57. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 63-81. On March 15, 2023, the ALJ issued a decision denying Plaintiff's SSI claim. Tr. 45-62. Plaintiff requested Appeals Council review, which was denied on November 1, 2023. Tr. 1-7. Plaintiff then sought review before this Court.

## II. Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2021, the application date. Tr. 50. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: posttraumatic stress disorder (PTSD),

bipolar, and anxiety. Tr. 50. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 51. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember and carry out simple instructions, can have occasional contact with the general public and coworkers, and can perform work involving occasional changes in work routine and setting.

Tr. 52.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 55.

At step five, however, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as (1) wall cleaner, DOT 381.687-026, (2) machine packager, DOT 920.685-078, (3) motel/hotel housekeeper, DOT 323.687-014, and (4) retail trade marker, DOT 209.587-034. Tr. 56. The ALJ therefore found Plaintiff not disabled. Tr. 57.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors. She contends the ALJ erred by (1) discounting her subjective symptom testimony without a clear and convincing reason for doing so, and (2) rejecting lay witness testimony without a germane reason. For the reasons that follow, the Court should find the ALJ erred, reverse, and remand for further proceedings.

**I.      Symptom Testimony**

Plaintiff first asserts that the ALJ improperly rejected her subjective symptom testimony. Pl.'s Opening Br. at 5. This Court agrees that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

5 – FINDINGS & RECOMMENDATION

### A. Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

B.   **Plaintiff's Testimony**

At the hearing, Plaintiff testified that her PTSD and severe anxiety are the primary impairments preventing her from keeping a job. Tr. 69-70.[3] She testified that just "thinking about having to leave [the] house makes [her] whole body start shaking." Tr. 70. Plaintiff related that she is taking medication, but that she "still feel[s] like [her] anxiety takes over," and she still has PTSD episodes where she blacks out and didn't know where she was. Tr. 71-72. When her depression is bad, it can be difficult to even get out of bed, bathe herself, or remember to eat. Tr. 72-73. In addition to medication, she "sometimes" sees a therapist to help manage her symptoms. Tr. 73-74.

In written testimony, she stated the following: She has not been able to hold a job for more than a few months at a time except for one job that she lost due to multiple absences. Tr. 299. She has never been able to deal with the demands of full or even part time work and that this has caused her extraordinary depression. Tr. 299. When describing a typical day, she lays in bed for a while, stresses about what she needs to do and what she cannot do, goes to Starbucks, forgets to eat until noon, and watches tv, reads, cleans, or walks until bed time. She is not able to be in public for long periods of time or go to new places by herself, that she cannot stay asleep due to racing thoughts and night terrors, she forgets to bathe sometimes for days, rarely does her own hair due to not having energy, does not feed herself until noon due to loss of appetite, and she feels like her body weighs a ton due to her depression. Tr. 300. She needs a reminder for administration of medicine and that while she prepares her own meals, she does not eat much

---

[3] Plaintiff also testified about physical symptoms at the hearing which she does not raise in this appeal and are not before the Court. *See, e.g.,* Tr. 70 (Plaintiff describing ulcerative colitis symptoms).

7 – FINDINGS & RECOMMENDATION

during low days. Tr. 301. As for household chores, she cleans, does laundry, mops, cleans the cat box, vacuums, and disinfects, but that she needs encouragement. Tr. 301.

During Plaintiff's extreme lows, she does not go outside and when going out, she does not go out alone due to getting terrible, extreme anxiety in public. Tr. 302. Her PTSD is triggered while in public and she feels as though she will be sexually assaulted again. Tr. 302. She gets panic attacks about driving sometimes. When she shops, Plaintiff stated that she uses curbside pickup so that she does not have to deal with the public and she also shops by computer. Tr. 302. Due to her bipolar disorder, she has manic episodes during which frivolous spending can occur. Tr. 302. As for social activities, she does not have many friends but that she plays video games online with people. Tr. 303. She goes to Starbucks every day by "riding along" with someone else to manage her anxiety. Tr. 303. She very rarely goes out to socialize and if she does, she goes somewhere that she can leave when she wants to. Tr. 303.

As for her abilities, Plaintiff's conditions affect memory, completing tasks, concentration, and getting along with others due to her racing thoughts, exhaustion, insomnia, and sleep deprivation. Tr. 304. She cannot finish what she starts (such as a conversation, chores, reading, or watching a movie) and that she does not follow spoken instructions as well. Tr. 304. She has been fired or laid off from a job because of getting into a verbal altercation with a coworker. Tr. 304. She does not handle stress very well nor changes in routines. Tr. 305.

Plaintiff also testified that she has problems remembering instructions or directions and that when her depression is at its worst, she fails to show up to work all together, loses interest, learns slower, and going to work induces panic attacks or general unhappiness. Tr. 332. Some days she is unable to get out of bed at all and forgets to eat or bathe. Tr. 333. She is generally fatigued all the time and that as for reminders, usually other people check in with her. Tr. 334.

8 – FINDINGS & RECOMMENDATION

She often forgets to refill her medications or she will take more than one day's dosage by accident. Tr. 334. As for cooking, she makes ready-made meals like soups, sandwiches, or simple fish dishes unless she is in a depressive low, and that it takes her not more than a few minutes or she'll lose interest. Tr. 334. As for housework, she does not engage for more than an hour. Tr. 334. She does not do housework when she is bed ridden with depression, though. Tr. 334. Socially, she has panic attacks when she has to do new things and she has problems getting along with family and friends. Tr. 336.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 53. Specifically, the ALJ discussed the objective medical evidence, Plaintiff's improvement with treatment, and her activities of daily living when discounting her subjective symptom testimony. Tr. 53-54. This Court addresses each rationale in turn.

### C.     Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the

intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

The ALJ erred by failing to identify actual conflicts between Plaintiff's allegations of limitations stemming from her depression, anxiety, and PTSD and the record. The ALJ highlighted Plaintiff's allegations that her PTSD causes her to black out at times, and that her anxiety causes memory problems and trouble sleeping, and found those allegations clashed with the record. Tr. 54 (citing Tr. 72-72, 311). The ALJ first noted that the medical record contained no objective evidence of Plaintiff's blackouts, Tr. 54, but absence of corroborating evidence is not a sufficient basis (on its own) to discount symptom testimony. *Robbins.,* 466 F.3d at 883.

The ALJ did not identify objective medical records that conflicted with Plaintiff's allegations of disabling anxiety symptoms either. Tr. 54. The ALJ cited several mental health appointments where Plaintiff showed clear speech, logical thought processes, a euthymic affect, and intact insight and judgment. Tr. 53-54, 526, 795. The ALJ also noted that, at a March 2022 appointment, Plaintiff reported it "easier to find a good mood to be in" on her current medications and reported improvement falling asleep and only occasional fatigue. Tr. 54, 680-81,716. But as the Ninth Circuit has emphasized, "[c]ycles of improvement and debilitating [mental] symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison*, 759 F.3d at 1017-18.

10 – FINDINGS & RECOMMENDATION

A review of the record as a whole shows that Plaintiff's mental health waxed and waned between during the relevant period. *Compare* Pl. Br at 10-11 (citing medical records documenting ongoing mental health symptoms) with Tr. 53-54 (neglecting to acknowledge those periods when Plaintiff's mental health symptoms worsened). Even when Plaintiff improved on new medications she still reported difficulties with life stressors and occasional fatigue. Tr. 54 (citing 716). These aspects of the medical record—which the ALJ failed to cite—all directly support Plaintiff's testimony.

In sum, when viewing the record as a whole, the ALJ improperly relied on cycles of improvement as a reason to reject Plaintiff's subjective symptom testimony about her mental health. Thus, the purported conflict with the objective medical evidence was not a clear and convincing reason for the ALJ to reject Plaintiff's symptom testimony.

### D.     Improvement with Treatment

An ALJ may also reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The medical records the ALJ cited showed medication temporarily helped improve Plaintiff's mental health symptoms, but this was not a clear and convincing reason to discount her symptom testimony generally. The ALJ concluded that Plaintiff "reported good response to medications," but himself acknowledged significant portions of the relevant period when Plaintiff's medications were "not helpful for her depression" or caused drowsiness. Tr. 54. The

11 – FINDINGS & RECOMMENDATION

ALJ highlighted that Plaintiff's mood responded positively to Quetiapine and Prozac, but this was not until late 2022. Tr. 54, 717. The ALJ also discounted Plaintiff's allegations about trouble sleeping because the medical records showed Quetiapine was helpful for sleep and she was sleeping six hours on average. Tr. 54, 769. This improvement, again, only began late in the relevant period. Tr. 54. The Ninth Circuit has recently emphasized that ALJs should consider how a claimant's condition changes over time, and whether such changes support a finding of disability for a shorter period of time even if not for the entire relevant period. *Smith v. Kijakazi*, 14 F.4th 1108, 1110 (9th Cir. 2021). The ALJ here erred by not evaluating how evidence of short-term improvement affected the disability analysis for the entire relevant period. *See* Tr. 54. Accordingly, any improvement with treatment was not a clear and convincing reason for the ALJ to reject Plaintiff's symptom testimony.[4]

### E.     Activities of Daily Living

The ALJ also discounted Plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 54. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. § 404.1529(c)(3)(i). The Ninth Circuit has found such routine activities as playing video games, using public transportation, and preparing meals can undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d

---

[4] On remand, the ALJ must consider whether evidence that Plaintiff's symptoms improved with treatment beginning in late 2022 undermined her disability claim for that period.

1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ failed to adequately identify how Plaintiff's activities of daily living undercut her testimony concerning her inability to work. The ALJ highlighted evidence that Plaintiff would go to the gym three to five times a week, was increasing her exercise in the hopes of representing a line of fitness nutrition products, and went to Starbucks daily. Tr. 53-54, 603, 742, 750, 771, 807-08. These activities do not directly conflict with Plaintiff's testimony about depression and PTSD, however. Plaintiff explained that despite her regular exercise routine she does not go out alone, goes at night when there are few other people, and that she has previously had to take rescue medication such as hydroxyzine after the fact. Tr. 385, 617, 684. And, while she testified that she leaves the house for a daily coffee, she also shared that it is still generally difficult for her to leave the home, especially unaccompanied. Tr. 336. The record also shows Plaintiff stopped going to the gym altogether around November 2022 because of anxiety. Tr. 74. Ultimately, the ALJ failed to explain how Plaintiff's activities directly conflicted with her symptom testimony or represented a transferable work skill. In sum, the ALJ failed to provide specific, clear, and convincing reasons as to why Plaintiff's testimony contradicted, or was undermined by, the objective medical record and her activities of daily living.[5]

---

[5] The Commissioner also argues that Plaintiff waived any challenge to the ALJ's reliance on state agency psychological consultant Scott Kaper, Ph.D.'s "less than fully persuasive" opinion that Plaintiff could perform work that involved simple, routine tasks for a full, eight-hour day. Def Br. 3 (citing Tr. 55, 103-05). The Commissioner believes this is relevant because "the ALJ's assessment of a nondisabling mental RFC was supported by his unchallenged analysis of [Dr.

II.     **Lay Witness Testimony**

Plaintiff next asserts that the ALJ improperly rejected lay witness testimony, which was a report from Plaintiff's mother, Deirdre M., without providing germane reasons for doing so. Pl.'s Opening Br. at 5. This Court agrees.

A.      **Legal standards**

Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694.[6] But the ALJ is not required "to discuss every

---

Kaper's opinion]," even though the ALJ rejected parts of Dr. Kaper's opinion and imposed more restrictive RFC findings in the "B" criteria relative to Plaintiff's ability to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. Tr. 103. Dr. Kaper's conclusions are not dispositive of the disability determination because the ALJ relied on his own analysis of the objective medical evidence and Plaintiff's daily activities to support the conclusion that she had only moderate limitations in "B" criteria, not Dr. Kaper's opinion. Tr. 55. Plaintiff rightly challenged these conclusions, so did not forfeit any relevant issue in this appeal. *See* Pl. Br. 7-10. Moreover, the ALJ's rejection of Dr. Kaper's "B" criteria analysis directly supports Plaintiff's claim: she agrees with the ALJ that Dr. Kaper was wrong to impose only "mild" limitations in "B" criteria, and argues only that the ALJ did not go far enough in recognizing the severity of her limitations in those areas.

[6] Citing in the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues that the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 8-9. The Ninth Circuit, in a recent unpublished opinion, noted that it remains "an open question whether the new regulations affect the

witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

**B.    Analysis**

The lay witness testimony in this case, which as the report from Plaintiff's mother, mirrored Plaintiff's own testimony about her symptoms. Plaintiff's mother described mental health-related limitations that tracked Plaintiff's own allegations. *Compare* Tr. 69-74 (Plaintiff's testimony) *with* Tr. 316-322 (Plaintiff's mother's testimony). The ALJ did not provide any reason, let alone a germane one, for disregarding Plaintiff's mother's testimony, and therefore erred. Tr. 54.

The Commissioner argues the error was harmless because Plaintiff's mother's testimony mirrored her own, and the ALJ offered justifications for discounting Plaintiff's testimony. Def. Br. at 8-9 (citing *Molina*, 674 F.3d at 1119, 1122). As discussed above, however, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints, so the

---

longstanding requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *3 (9th Cir. Nov. 7, 2024). Absent further guidance from the Ninth Circuit, this Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons." *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

commissioner cannot demonstrate harmless error based on the overlap between the lay witness statements and Plaintiff's own testimony.

### III.  Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Here, Plaintiff requests that this Court remand this case for further proceedings. A remand for further proceedings is appropriate given the errors identified above.[7] On remand, the ALJ must reevaluate the Plaintiff's symptom testimony and either accept that testimony or provide a specific, clear and convincing bases for rejecting it. The ALJ must also accept the lay witness statement or provide germane reasons for rejecting it. Finally, the ALJ should, if appropriate, formulate a new RFC and obtain new VE testimony if necessary to accurately capture Plaintiff's mental health-related limitations.

## RECOMMENDATION

For the reasons given above, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

## SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

---

[7] Plaintiff argues that this case should be "remand[ed] for further proceedings at the very least," but does not present any argument for remand for immediate payment of benefits. Pl.'s Reply 6. Accordingly, this Court need not consider whether the credit-as-true standard is met because "Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate." *Marshall M. v. Comm'r Soc. Sec. Admin.*, 2024 WL 2317386, at *9 (D. Or. May 22, 2024).

The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered a waiver of a party's right to do novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 16th day of December, 2024.

ANDREW HALLMAN
United States Magistrate Judge